IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRISTIAN DIONDRAY WEATHERS, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION No. H-12-2735 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent.* | § | |

**MEMORANDUM OPINION AND ORDER**

Tristian Diondray Weathers, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his conviction for burglary of a habitation. Respondent filed a motion for summary judgment (Docket Entry No. 11), to which petitioner filed a response (Docket Entry No. 12).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action for the reasons that follow.

**I. PROCEDURAL BACKGROUND**

A jury found petitioner guilty of burglary of a habitation in Harris County, Texas, and assessed punishment at sixty years incarceration, as enhanced. The conviction was affirmed on appeal. *Weathers v. State*, No. 01-09-00093-CR, 2010 WL 3212123 (Tex. App. – Houston [1st Dist.] 2010, pet. ref'd) (not designated for publication). The Texas Court of

Criminal Appeals refused discretionary review, and denied petitioner's application for state habeas relief without a written order on the findings of the trial court. *Ex parte Weathers*, No. 77-179-02.

Petitioner claims that trial counsel was ineffective in the following particulars:

   (1)   failing to request a jury instruction on accomplice witness testimony;

   (2)   failing to object to extraneous offense evidence during punishment;

   (3)   failing to challenge suggestive identification procedures; and

   (4)   failing to object to and request a mistrial for the State's bolstering of two witnesses.

Respondent argues that these claims are without merit.

## II. FACTUAL BACKGROUND

The First Court of Appeals for the State of Texas set forth the following statement of facts in its opinion affirming the conviction:

> One afternoon in June 2008, Filiberto Perez and his teenage son, also named Filiberto, looked through the front window of their home and saw three men with black suitcases in the yard of his neighbor, Glenda Salazar. The men, later identified as Weathers, Sotero Chavez, and Jamarcus Smith, carried the suitcases through Salazar's front door into her home and then carried them out to a brown four-door car parked in the driveway.
>
> Perez called 911 to report a burglary in progress and gave them the license tag number for the parked car. The Harris County Sheriff's Department traced the number to Weathers at an address on Gatton Park, a street a few miles away. The Department dispatched Deputy C. Mullins to respond to the call. Because the car had already left the site of the burglary, Mullins first headed for the address listed on the car registration and called for back-up to meet him there. As Mullins approached, he saw several people, including Weathers, standing

2

in the driveway by a brown four-door car bearing the reported license plate number. Deputy R. Lee had also arrived at the scene to assist Mullins.

When the people in the driveway noticed the patrol cars, they ran into the house. The officers followed, noting that a black suitcase like the one Perez described sat open in the living room with electronics inside. The officers reached the back door, which was open, and saw that some of the people fled through broken boards in the back fence. A few individuals, however, remained near the car and in the house. The officers detained three of the men, including Weathers.

While other officers held Weathers and the other suspects, Mullins left to meet with the Perezes. The Perezes agreed to accompany Mullins to the Gatton Park house to identify the suspects. When they arrived a little less than an hour later, Perez identified Weathers as one of the burglars he saw at Salazar's home, explaining that he recognized Weathers by the white sleeveless t-shirt he was wearing. A search of Weathers' person led to discovery of Salazar's identification in his pocket. The officers recovered numerous electronics and jewelry from the Gatton Park house and the brown car that Salazar later identified as hers. The police arrested and charged Weathers with burglary of a habitation.

During its case-in-chief, the State called Chavez to testify. Chavez confirmed that, earlier on the day of the burglary, Weathers asked him if he wanted 'to go hit a lick.' Chavez explained that he understood Weathers' question as asking if Chavez wanted to break into somebody's house and take their belongings. Chavez said he would, and got into Weathers' car along with Smith. Chavez explained that once they arrived at Salazar's house, they went their separate ways to collect the valuables and that Weathers kept telling them to hurry up. Chavez brought some of the stolen items to a pawnshop, where they were later recovered by the police and reclaimed by Salazar, along with a pawnshop video of Chavez's transaction. With this evidence, the police charged Chavez with felony theft.

*Weathers*, 2010 WL 3212123, at *1.

### III. THE APPLICABLE LEGAL STANDARDS

A. <u>Habeas Review</u>

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

4

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. §2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

B.  **Summary Judgment**

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed

facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).

To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner alleges five instances of ineffective assistance of trial counsel, each of which is addressed separately, as follows.

    A.    <u>Failure to request a jury instruction on accomplice witness testimony</u>

Petitioner claims that trial counsel was ineffective in failing to request a jury instruction regarding accomplice witness testimony. The issue of petitioner's right to an accomplice witness testimony instruction was the sole issue on direct appeal. In resolving the issue against petitioner, the intermediate state appellate court held as follows:

7

Weathers' single issue on appeal concerns the absence of a jury instruction on the law of accomplice witness testimony. We review a claim of jury-charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). First, we determine whether there is error in the charge. If error exists and the appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' in other words, if there is 'some harm.' If the error was not objected to, it must be 'fundamental' and will require reversal only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.' Under both standards, we look to the actual degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole.

The Texas Code of Criminal Procedure requires that accomplice testimony be 'corroborated by other evidence tending to connect the defendant with the offense committed.' An accomplice is an individual who participates with a defendant in the commission of a crime by doing some affirmative act with the requisite culpable mental state that promotes the commission of that offense.

The record shows that Chavez agreed to participate in the burglary with Weathers, went with Weathers and Smith to Salazar's home, and removed valuables from the home in connection with the criminal enterprise. This evidence requires the conclusion that Chavez was Weathers' accomplice in the robbery. Because the State presented Chavez's testimony as part of the evidence used to convict Weathers, the Code of Criminal Procedure requires that his testimony be corroborated, and failure to instruct the jury on that requirement is error.

Having determined that the trial court erred by failing to give the instruction, we must next decide whether the error harmed Weathers. Weathers did not request the instruction or object to its omission, and thus failed to preserve error. Accordingly, our review focuses on whether Weathers suffered 'egregious harm' as a result of the missing instruction.

The absence of a jury instruction specifically requiring corroboration of an accomplice's testimony likely misled the jury into believing that Chavez's testimony did not need to be corroborated because the charge did not contain

an instruction requiring corroboration of the accomplice's testimony. This factor tends to support a finding of harm.

Non-accomplice evidence need not directly link the accused to the crime nor independently prove his guilt beyond a reasonable doubt. The erroneous omission of an instruction that tells the jury that testimony must be corroborated generally is harmless unless the corroborating evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.' In reviewing the strength of the corroborating evidence, we 'examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime.'

Weathers claims that 'the State's case against [him] relied heavily on Chavez's testimony' and, as in the Saunders case, 'rational jurors could have assessed the State's case as 'significantly less persuasive' without Chavez's testimony.' According to Weathers, without Chavez, the evidence to prove that [he] actually entered the residence of the complainant is razor thin.

We disagree. Independent of Chavez's testimony, the State presented ample evidence to support the jury's finding that Weathers committed the burglary. As Weathers notes, the testimony of Perez and his son, both eyewitnesses, placed Weathers at Salazar's home on the day of the burglary. Perez's son identified Weathers as one of the individuals he saw coming out of Salazar's house with suitcases and putting them in the trunk of the car. Both of the officers who responded to the burglary in progress call testified to the identification of Weathers' car as the vehicle used in the burglary, the discovery of Weathers, his car, and the items stolen from Salazar's home in Weathers' car and at his house. Salazar also appeared and confirmed that she owned the items recovered from Weathers' house and car by the officers, as well as the items recovered from the pawn shop.

\* \* \* \*

The independent testimony from the police officers and eyewitnesses, as well as the owner of the stolen property, standing alone, is sufficient to connect Weathers to the burglary. That evidence is not so unconvincing in fact that it renders the State's overall case for conviction clearly and significantly less persuasive.

In its opening argument, the State focused on the testimony of the investigating officers and the eyewitnesses, the use of Weathers' car in committing the burglary and the identification of Salazar's property in Weathers' possession. The State made no mention of Chavez.

At closing, defense counsel attempted to cast doubt on Perez's identification of Weathers by the shirt he was wearing and emphasized the defense witnesses' testimony that Weathers was at home when the burglary occurred. The State waived its right to open but reserved rebuttal. It initially stressed the effect of the crime on Salazar's peace of mind and her identification of her property found in Weathers' house and car, as well as the eyewitness testimony from the Perezes identifying Weathers as a participant in the burglary. The State argued:

> Is there any doubt? And if there was, then you have the one person who got up here today with no reason to lie. The one person who got up here and didn't lie under oath to all 12 of you: Sotero Chavez. He's doing his time. He took responsibility for his part in this. He pled. And he's not getting a reduction in sentence. He's not getting anything. But he got up here and he told you the truth.
>
> He told you whose idea it was: [Weathers]. He told you whose car they took: His. He told you who drove both ways: Him. Told you what this guy said: Do y'all want to go hit a lick?

The State concluded with another reference to Salazar's testimony.

The State's waiver of the right to begin closing signals its apparent belief in the strength of the evidence supporting conviction. It used about a quarter of the time in its brief rebuttal discussing Chavez's testimony. The State's argument does not emphasize the actual evidence adduced by Chavez's testimony, but the reasons why the jury should find his testimony credible. We conclude that these arguments do not focus the jury's attention on Chavez's testimony in a way that would cause the jury to rely on it without the corroborating evidence in finding that Weathers committed the burglary.

The State presented all of the evidence except for Chavez's testimony in its case in chief. It called Chavez only as a rebuttal witness, after the defense adduced testimony from its witnesses that Weathers did not participate in the

10

burglary and was at his house when it occurred. The testimony elicited from Chavez directly rebutted Weathers' defensive theory and identified Weathers as an active participant in the burglary.

The record shows that strong and reliable evidence connects Weathers to the burglary, and the State's limited purpose in presenting Chavez's testimony lessened any impact caused by the lack of an instruction requiring corroboration of the accomplice's testimony. We therefore hold that Weathers was not egregiously harmed by the lack of an instruction regarding the corroboration requirement for Chavez's testimony.

We hold that Weathers was not egregiously harmed by the lack of a jury instruction on the need for independent corroboration of accomplice testimony. We therefore affirm the judgment of the trial court.

*Weathers*, at *4–11 (paragraph titles, citations omitted).

In rejecting petitioner's argument on collateral review, the trial court made the following relevant findings and conclusions:

> 6. Sotero Chavez was the applicant's accomplice because the record shows that Chavez agreed to participate in the burglary with the applicant, went with the applicant and the third co-defendant into the complainant's house, and took the complainant's property from her house during the burglary.
>
> 7. The purpose of the accomplice witness instruction is to inform the jury that it cannot use the accomplice witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense.
>
> 8. The appellate court found that there was 'ample' non-accomplice evidence in the primary case to support the jury's finding that the applicant committed the burglary.
>
> 9. Even discounting the testimony by the accomplice, there was sufficiently reliable testimony from the eyewitnesses, the complainant, and the police officers connecting the applicant to the burglary, and

11

> there is no rational or articulable basis for disregarding any of this testimony.
>
> 10. The applicant fails to demonstrate that he was harmed by trial counsel's failure to request an accomplice witness instruction or object to its omission in the charge to the jury.

*Ex parte Weathers*, p. 69 (citations, record references omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying state habeas relief.

The Court has carefully reviewed and considered the opinion and findings of the state courts, and agrees with those courts that petitioner fails to establish that he was harmed or prejudiced by counsel's actions or inactions regarding the jury charge. Specifically, petitioner does not meet his burden of showing that, but for counsel's failure to request the accomplice witness instruction, there is a reasonable probability that the results of the trial would have been different. As noted by the state courts, the purpose of an accomplice witness instruction is to inform the jury that it cannot use accomplice witness testimony unless there is also some non-accomplice witness evidence connecting the defendant to the charged offense. The record here discloses ample non-accomplice witness evidence connecting petitioner to the burglary, including testimony from the eyewitnesses, the complainant, and the police officers. Consequently, the record does not establish *Strickland* prejudice, and no ineffective assistance of trial counsel is shown.

The state court denied relief on this issue on collateral review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application

of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner further fails to show "that the state court's ruling on the claim . . . is so lacking in justification that there was an error well understood and comprehended in existing law beyond any probability for fairminded disagreement." *Richter*, 130 S. Ct. at 786–87. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

      B.    <u>Failure to object to extraneous offense evidence at punishment</u>

Petitioner next complains that, during the punishment phase of trial, trial counsel should have objected to testimony that he committed a prior burglary. In rejecting petitioner's argument on collateral review, the trial court made the following relevant findings and conclusions:

> 11. To show ineffective assistance of counsel for failure to object, the applicant must show that the trial court would have either sustained the objection or that [it] would have committed error in overruling the objection.
>
> 12. Regarding the admissibility of an extraneous offense, the role of the trial court is to determine whether there is sufficient evidence to support such a finding, and whether the burden of proof is actually met is a question for the jury.
>
> 13. The direct and circumstantial evidence introduced regarding the extraneous offense of the burglary of Erica Scott's house was sufficient for a jury to reasonably find beyond a reasonable doubt that the applicant committed the offense.

13

14. The applicant fails to show that the trial court would have erred in denying trial counsel's objection to the extraneous offense testimony of Erica Scott.

15. Because Erica Scott's testimony regarding the extraneous offense was admissible, trial counsel was not ineffective for failing to object to admissible evidence.

16. The testimony of Erica Scott that she had to move as a result of the burglary of her home was not inadmissible 'victim impact' testimony.

17. Because Erica Scott's testimony regarding the effect the extraneous burglary had on her was admissible, trial counsel was not ineffective for failing to object to admissible evidence.

18. The applicant fails to show that trial counsel's failure to object to the testimony of Erica Scott regarding the extraneous offense or the impact of that offense on her fell below an objective standard of reasonableness, or that but for counsel's decision, a reasonable probability exists that the result of the proceeding would have been different.

*Ex parte Weathers*, pp. 69–70 (citations, record references omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying state habeas relief.

The state habeas court found that the extraneous offense evidence was admissible under state law. This Court cannot review the admissibility of the evidence, as it does not reconsider issues of state law in a section 2254 proceeding. *See Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011). Accordingly, the evidence was admissible and trial counsel was not ineffective in failing to object to admissible evidence. No *Strickland* violation is shown.

The state court denied relief on this issue on collateral review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application

of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner further fails to show "that the state court's ruling on the claim . . . is so lacking in justification that there was an error well understood and comprehended in existing law beyond any probability for fairminded disagreement." *Richter*, 130 S. Ct. at 786–87. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

    C.    <u>Failure to challenge suggestive identification procedures</u>

Petitioner asserts that trial counsel should have objected to suggestive out-of-court identification procedures that increased the risk for his misidentification.

In rejecting petitioner's argument on collateral review, the trial court made the following relevant findings and conclusions:

> 19.    Whether an out-of-court identification procedure violates due process is determined by looking at the facts of each case to determine whether it resulted in an irreparable misidentification of the defendant.
>
> 20.    An analysis using the factors provided in *Neil v. Baggers* demonstrates that there was no substantial likelihood of misidentification of the applicant in the primary case; where the eyewitnesses were able to observe the applicant during the offense for ten to fifteen minutes, one eyewitness saw the applicant's face from the side and from the front as he was running back and forth from the complainant's house to the car, the eyewitnesses obtain the license plate number of the vehicle that the applicant flees the scene in, the eyewitnesses identify the applicant at the applicant's home less than an hour after the burglary, and the eyewitnesses are sure about their identification of the applicant and one other co-defendant.

21. The totality of the circumstances even further reduces the chance of a misidentification in the primary case, where the vehicle the burglars flee in is registered to the applicant, six minutes after the burglary call drops [sic] the applicant is found standing next to this car which is parked in the driveway of his house which is a five to six minute drive from the scene of the burglary, the complainant identifies numerous items stolen from her house that are found inside the applicant's house, car, and garage, the complainant's driver's license is found in the applicant's back pocket during the booking process, and a co-defendant testifies during the State's rebuttal confirming the applicant's involvement.

22. The applicant fails to show that a motion to suppress his statement would have been granted and that ruling on the motion would have changed the outcome of the case.

23. The applicant fails to show that the trial court would have erred in denying trial counsel's objection to the out-of-court or in-court identifications of the applicant.

24. The applicant fails to show that trial counsel's decision not to file a motion to suppress the identifications or object to their admission at trial fell below an objective standard of reasonableness, or that but for counsel's decision, a reasonable probability exists that the result of the proceeding would have been different.

*Ex parte Weathers*, pp. 70–71 (citations, record references omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying state habeas relief.

Petitioner incorrectly argues that the allegedly prejudicial identification procedure directly caused his conviction; the record and state court findings show differently. The eyewitnesses correctly identified petitioner's vehicle by its license plate, which police officers immediately traced to petitioner's home address. Upon their arrival at petitioner's home six minutes later, petitioner was found with complainant's possessions in his vehicle

16

and house. Moreover, the complainant's driver's license was found in petitioner's pocket following his arrest, and petitioner's accomplice testified at trial that he and petitioner had committed the burglary. The totality of the circumstances demonstrates that there was no substantial likelihood of misidentification of petitioner. Petitioner again fails to establish that he was prejudiced by counsel's failure to object, in that he does not show that, but for counsel's failure, there is a reasonable probability that the results of the trial would have been different. No *Strickland* violation is shown.

The state court denied relief on this issue on collateral review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner further fails to show "that the state court's ruling on the claim . . . is so lacking in justification that there was an error well understood and comprehended in existing law beyond any probability for fairminded disagreement." *Richter*, 130 S. Ct. at 786–87. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

D.  Failure to object to the State's bolstering of two witnesses

Petitioner complains that trial counsel should have objected to and moved for a mistrial for the State's bolstering of the testimony of his accomplice witness and a police officer.

In rejecting petitioner's argument on collateral review, the trial court made the following relevant findings and conclusions:

> 25. The prosecutor never personally vouche[d] for the honesty or truthfulness of a police officer witness in the trial of the primary case.
>
> 26. The applicant fails to demonstrate that trial counsel's failure to object to the alleged 'improper argument which bolstered the testimony of police witnesses' was in any way deficient, or that but for the alleged deficiency, a reasonable probability exists that the result of the proceeding would have been different.
>
> 27. The applicant fails to demonstrate that trial counsel's failure to object to the prosecutor's closing argument regarding whether to believe the accomplice witness as improper bolstering was in any way deficient, or that but for the alleged deficiency, a reasonable probability exists that the result of the proceeding would have been different.
>
> 28. The representation received by the applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Weathers*, p. 71 (citations, record references omitted). The Texas Court of Criminal Appeals expressly relied on these findings in denying state habeas relief.

Even assuming trial counsel erred in not objecting to the alleged bolstering, petitioner again fails to establish that, but for counsel's failure to object, there is a reasonable probability that the results of his trial would have been different. In the absence of prejudice, no *Strickland* violation is shown.

The state court denied relief on this issue on collateral review. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the

18

record. Petitioner further fails to show "that the state court's ruling on the claim . . . is so lacking in justification that there was an error well understood and comprehended in existing law beyond any probability for fairminded disagreement." *Richter*, 130 S. Ct. at 786–87. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## V. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 11) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 23rd day of July, 2013.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE